[No. A081624. First Dist., Div. Four. Oct. 30, 1998.]

DIANE L. SANGSTER, Plaintiff and Appellant, v.
TYLER M. PAETKAU et al., Defendants and Respondents.

**COUNSEL**

Qualls & Workman, Daniel H. Qualls and Robin G. Workman for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, James N. Penrod, Karen Johnson-McKewan, Dana P. Veeder, Cooper, White & Cooper, James M. Wagstaffe, Matthew B. Pavone, Thomas Mark Di Franco, Hosie, Wes, Sacks & Brelsford, James F. Brelsford, Rachel A. Silvers and Nicole A. Wong for Defendants and Respondents.

**OPINION**

**McGUINESS, J.**—Diane L. Sangster appeals from summary judgment entered against her on her complaint for malicious prosecution against

Phoebe Hearst Cooke (Cooke), the San Francisco Equestrian Festival (the Festival), Tyler M. Paetkau, Philip M. Battaglia, and the law firm of Donovan, Leisure, Newton & Irvine (Donovan Leisure) (collectively, respondents), arising from an underlying cross-complaint for fraud and breach of fiduciary duty filed against Sangster by Cooke and the Festival[1] We conclude that respondents established the existence of probable cause to bring the underlying cross-complaint and, therefore, affirm the summary judgment on Sangster's complaint for malicious prosecution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sangster was employed as Cooke's secretary beginning in 1989. Sangster's employment duties included assisting Cooke in creating and preparing printed programs for a horse show at the San Francisco Cow Palace sponsored by the Festival, Cooke and the Hearst Corporation. For several years, Sangster utilized the design services of Dennis Wozniak in designing and producing the programs. As part of his services, Wozniak acted as a broker, directly soliciting and receiving oral and written bids for printing and lithographic services in connection with the publication of the programs. Through 1991, Wozniak was paid for these brokerage services on a commission basis, and for his design services on an hourly basis. Wozniak would submit his own separate invoices for his hourly design services directly to Cooke or the Festival for payment.

In 1992, however, Sangster asked Wozniak to increase his markups on subcontractor invoices for the 1992 program without submitting his own bills to Cooke or the Festival. Wozniak agreed to do so. There is a dispute concerning whether or not Cooke knew of or agreed to this new arrangement. Sangster contends she did not conceal Wozniak's involvement in the 1992 program from Cooke or deceive her in any way, and Cooke actually knew at the time that Wozniak would be working on the 1992 program and approved of his involvement. Respondents, on the other hand, contend Cooke did not wish to employ Wozniak on the 1992 program, Sangster was aware of this, and she deliberately disobeyed Cooke's explicit instructions in this regard and then concealed from Cooke the fact of Wozniak's involvement.

At some point in 1992, Sangster informed Cooke of two different bids for printing the Festival's program: one for approximately $17,600; and a

---

[1]The Hearst Corporation was also a defendant in the underlying action and has been a respondent on appeal. However, Sangster and the Hearst Corporation have stipulated that the Hearst Corporation may be dismissed as a party to the appeal.

second, lower bid for approximately $14,600. The parties dispute the substance of what Sangster told Cooke about these bids and what Cooke herself understood. Sangster contends that she told Cooke the bids were for printing the program only and did not include the costs of typesetting, color separation and associated expenses. Respondents contend that Sangster represented the bids as covering the "total cost" of preparing the programs. Subsequently, when the programs were finished and Sangster presented Cooke with an invoice from Wozniak totaling more than $56,000, Cooke refused to pay.

In October 1992, Wozniak filed a breach of contract action against Cooke and the Festival for payment of his invoices in connection with the 1992 Festival program. Among other things, Wozniak's complaint alleged the existence of an "oral agreement" between himself, Cooke and the Festival whereby he "agreed to provide his graphic design services, organizational, film preparation and printing expertise in overseeing the production of the 1992 [Festival] Program, and [Cooke and the Festival] agreed to pay for the services rendered in producing the 1992 . . . Program."

In his deposition, taken on November 20, 1992, Wozniak testified that Sangster never told him directly that Cooke did not want him to work on the 1992 program. He only learned that Cooke might have reservations about his working on the 1992 program during a single conversation with Cooke in early July 1992, when she told him that "she saw no reason why I would be doing anything on the design . . . and that my work . . . on that design was not necessary." Other than this one conversation, Wozniak did not speak to Cooke before presenting his invoice. Aside from Sangster's representations to him, he had no independent knowledge that Cooke approved of his working on the 1992 program or even knew he was doing so. Wozniak testified that he usually employed a 15 percent markup and had used that percentage in his original bid. However, on July 23, 1992, Sangster told him to raise his markup on his services to 20 percent and also mark up the printing and file preparation work "in order that [he] get paid," because Cooke "[f]or some reason . . . was angry at [him]" and "was not going to pay [him] for [his] time. . . ." Wozniak did so, in order to get paid. Wozniak testified that the "oral agreement" alleged in his complaint referred to his personal discussions and understanding with Sangster alone, and that he had no oral agreement directly with either Cooke or the Festival regarding the 1992 program. "The only difference" in 1992, Wozniak testified, was that this time rather than billing Cooke and the Festival for his time directly, Sangster "told [him] to put all [his] time in the markup of the printing and

the film prep so [he would] get paid. . . ."[2] Wozniak made similar admissions in his answers to interrogatories.[3]

---

[2]Wozniak's November 20, 1992, deposition contains the following testimony relevant to this case: "Generally I mark things up at 15 percent. I found out during the progress of doing this program that [Cooke] was not going to pay me for my time, and that's when I marked it up 20 percent. I didn't have this information when I actually went to billing it.

"Q. When did you find out that Mrs. Cooke wasn't going to pay for your time?

"A. When I started talking—working with [Sangster] on July 23rd.

"Q. At that point is when you decided to mark it up 20 percent?

"A. Well, it was at that point that [Sangster] told me to just mark up—mark up the printing and the film work, which I had always done anyway.

"Anybody in business who buys things marks it up, marks up the purchase.

"That's when she told me that [Cooke] didn't want to pay me for my time. For some reason she [Cooke] was angry at me. And [Sangster] didn't know what it was, but she [Cooke] was. And in order that I get paid that I should make sure that I mark up the printing and the film prep work, which I did.

". . . . . . . . . . . . . . . . . . . . . . . .

"Q. . . . . What I'm trying to figure out is do you have any independent knowledge that Mrs. Cooke knew that you were working on the 1992 program?

"A. No, I do not.

". . . . . . . . . . . . . . . . . . . . . . . .

". . . Ms. Sangster told me to mark up my services, and I did so.

"Q. She said to mark up your services, and you took that to mean everything that you did?

"A. Well, of course. Certainly. There were 31 hours I wasn't getting paid for.

". . . . . . . . . . . . . . . . . . . . . . . .

". . . We had basically the same personal understanding and agreement, for the most part, as we did with all other years.

"The only difference this year was that [Sangster] told me to put all my time in the markup of the printing and the film prep so I get paid. And there is a distinction there.

". . . . . . . . . . . . . . . . . . . . . . . .

"This year was totally different than other years that way, in terms of prior—because [in] prior years I billed for my time. I billed [Cooke] or [the Festival] for my time. I always marked up services.

"Q. Just to clarify, then, this was the first year that you actually—you didn't bill for your time and you just billed the 20 percent markup?

"A. Right. That is correct.

"Q. Okay. And then in past years you billed your time directly?

"A. I would bill the amount of time that I had in a specific project.

"Q. Okay. Was there any markup onto that time spent?

"A. No. That was just my time. And I had a fixed rate for that.

"Q. Did Ms. Sangster tell you why there was this difference in allotting for your time?

"A. She told me that Phoebe Cooke was acting real funny this year, and she thought—and then based on what transpired with that invitation, [Sangster] felt it would be best not to bother with any additional bills if we didn't have to. So, in her opinion, it would be best if I just marked up the work that I brought out and bill [the Festival] for that.

"And normally I would not work that way, but I needed the business.

". . . . . . . . . . . . . . . . . . . . . . . .

". . . I worked through Diane Sangster. Diane Sangster told me what to do. I did what Diane Sangster told me to do."

[3]Among other things, in his interrogatory answers Wozniak acknowledged that all his communication on the 1992 program was with Sangster, not Cooke, and that "[i]t was at this

On November 24, 1992, four days after Wozniak's deposition, Cooke and the Festival filed a cross-complaint against Sangster and Wozniak alleging causes of action for (1) conspiracy to defraud; (2) negligent misrepresentation; and (3) fraudulent breach of fiduciary duty. The cross-complaint sought damages and declaratory relief on the respective rights and obligations of Sangster, Wozniak, Cooke and the Festival in connection with the preparation of the 1992 Festival program. Among other allegations of fact, all three causes of action in the cross-complaint were based on (1) Cooke's statements to Sangster and Wozniak in early July 1992 informing them that Wozniak's services were not needed in connection with the 1992 Festival program; (2) Cooke's reliance on Sangster's representations about the source and amounts of printing subcontractor bids in connection with preparation of the 1992 program; (3) the subsequent efforts by Sangster and Wozniak to conceal Wozniak's involvement in preparing the 1992 program through undisclosed and excessive markups on subcontractor costs; and (4) Sangster's breach of her fiduciary duty to Cooke in failing to disclose or actively concealing Wozniak's involvement in preparing and printing the 1992 program, including his undisclosed markups.[4]

After Wozniak and the Festival settled their disputes, the trial court assigned the remainder of the action to judicial arbitration. Each side submitted briefs and documentary evidence and presented sworn testimony. At the conclusion, the arbitrator found in favor of Cooke and the Festival, and awarded them damages against Sangster. Sangster timely filed a request for

---

time I was told by [Sangster] that I was not to bill [Cooke] for my time, since she [Cooke] was disturbed about the cost, but to mark up all the outside purchases for my compensation. Being that we have worked together for so long, I agreed."

[4]In pertinent part, the cross-complaint alleged: (1) ". . . Cross-Complainant Phoebe Hearst Cooke expressly informed Cross-Defendant Dennis Wozniak that his services were not needed in connection with the 1992 Festival"; (2) in reporting production bids on the 1992 program to Cooke, Sangster failed to tell her of "undisclosed, excessive and unsubstantiated charges by Cross-Defendant Dennis Wozniak Graphic Design, whom Cross-Complainant Phoebe Hearst Cooke had expressly told not to perform any further services in connection with the 1992 Festival Program"; (3) "[h]ad Cross-Complainant Phoebe Hearst Cooke known the true facts, including the facts that Cross-Defendant Dennis Wozniak Graphic Design was involved with this new bid and that the eventual invoice submitted would be excessive and unsubstantiated, she would not have accepted this purported new, lower bid"; (4) "[a]s a result of Cross-Defendant Diane L. Sangster's relationship as a trusted employee of Cross-Complainants, and the trust reposed in Cross-Defendant Diane L. Sangster by Cross-Complainants as a result thereof, a fiduciary relationship existed between Cross-Complainants and Cross-Defendant Diane L. Sangster, pursuant to which Cross-Defendant Diane L. Sangster owed Cross-Complainants a duty of utmost loyalty"; (5) "[a]s a result of the above described fiduciary relationship, Cross-Defendant Diane L. Sangster owed a duty to Cross-Complainants to disclose all material facts in connection with her employment in performing advertising and public relations services for Cross-Complainants"; and (6) Sangster "breached this fiduciary duty by failing to disclose, and by actively concealing" Wozniak's "active involvement" in the preparation, printing and publication of the 1992 Festival program.

trial de novo from the arbitration award. After a lengthy jury trial, Sangster prevailed.

On January 6, 1997, Sangster filed the instant lawsuit for malicious prosecution. She alleged that Cooke and the Festival, aided and abetted by the other respondents, maliciously prosecuted the cross-complaint against Sangster on the basis of fabricated evidence and testimony concerning: (a) representations allegedly made by Sangster to Cooke about bids to publish the 1992 program; (b) Cooke's reliance on those representations; and (c) resulting damages. Respondents filed a motion for summary judgment, arguing that: (a) the undisputed facts established probable cause to prosecute the underlying cross-complaint against Sangster and Wozniak; (b) the arbitrator's award in favor of Cooke and the Festival established the existence of probable cause; and (c) Sangster's malicious prosecution action was time-barred as against Cooke. The trial court found that no triable issue of material fact exists that respondents had probable cause to initiate the underlying cross-complaint against Sangster. It granted the motion for summary judgment on that basis, and specifically declined to rely on the arbitrator's decision. Judgment was entered in favor of respondents, and this appeal followed.

## II. Summary Judgment Standard of Review

The standard of review of a judgment entered upon the grant of a defense motion for summary judgment is well established. █ A defendant may move for summary judgment in any action or proceeding by contending that the action has no merit. (Code Civ. Proc.,[5] § 437c, subd. (a).) Section 437c, subdivision (c), *requires* a trial court to grant summary judgment if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."[6] (§ 437c, subd. (c); 6 Witkin, Cal. Procedure, *supra*, Proceedings Without

---

[5]All further statutory references are to the Code of Civil Procedure.

[6]"The motion for summary judgment *shall* be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (§ 437c, subd. (c), italics added.)

This wording, the result of a 1982 amendment based on rule 56(c) of the Federal Rules of Civil Procedure (28 U.S.C.), imposes a *mandatory* duty on the trial court. The former statute

Trial, § 217, p. 629.) Where the defendant is the moving party, he or she may meet the burden of showing that a cause of action has no merit by proving either that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action or defense. (§ 437c, subd. (o)(2); *Saldana* v. *Globe Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1513-1515 [285 Cal.Rptr. 385].)

A defendant moving for summary judgment may establish that an essential element of the plaintiff's cause of action is absent by reliance on competent declarations, binding judicial admissions contained in the allegations of the plaintiff's complaint, responses to discovery, and the testimony of witnesses at noticed depositions. (§ 437c, subd. (b); *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20-21 [112 Cal.Rptr. 786, 520 P.2d 10]; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579-593 [37 Cal.Rptr.2d 653]; *Uram* v. *Abex Corp.* (1990) 217 Cal.App.3d 1425, 1433 [266 Cal.Rptr. 695]; *Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 145-146 [142 Cal.Rptr. 46]; *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468-469 [33 Cal.Rptr. 661].) The plaintiff opposing a motion for summary judgment may not rely on his or her pleadings alone, but must file opposition to the motion, with affidavits setting forth specific facts demonstrating that a triable issue of material fact exists as to the cause of action or defense. (§ 437c, subd. (o); *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 743-746 [41 Cal.Rptr.2d 719]; *Union Bank* v. *Superior Court, supra,* 31 Cal.App.4th at pp. 590-593; *Saporta* v. *Barbagelata, supra,* 220 Cal.App.2d at pp. 468-469; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 201, pp. 613-614.)

█ The purpose of the summary judgment procedure is to identify those cases in which "there is no triable issue as to any material fact . . . ." (§ 437c, subd. (c).) For practical purposes, an issue of *material* fact is one which, in the context and circumstances of the case, "warrants the time and cost of factfinding by trial. . . ." (*Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735 [35 Cal.Rptr.2d 181].) In other words, not every issue of fact is worth submission to a jury. The purpose of summary judgment is to separate those cases in which there are *material* issues of fact meriting a trial from those in which there are no such issues. Thus, where the parties have had sufficient opportunity adequately to develop their factual cases through discovery and the defendant has made a sufficient showing to establish a prima facie case in his or her favor, in order to avert summary

gave the trial court discretion to deny the motion. (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 217, p. 629.)

judgment the plaintiff must produce substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing. (*Ibid.*; *University of Southern California* v. *Superior Court* (1990) 222 Cal.App.3d 1028, 1036, 1039 [272 Cal.Rptr. 264]; *Parsons Manufacturing Corp.* v. *Superior Court* (1984) 156 Cal.App.3d 1151, 1157 [203 Cal.Rptr. 419].) For this purpose, responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact. (*Martin* v. *Lockheed Missiles & Space Co., supra,* at p. 1735; *Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 978 [243 Cal.Rptr. 277].)

■ On appeal, we review the trial court's decision to grant or deny the summary judgment motion de novo, on the basis of an examination of the evidence before the trial court and our independent determination of its effect as a matter of law. (*Villa* v. *McFerren, supra,* 35 Cal.App.4th at p. 741; *Union Bank* v. *Superior Court, supra,* 31 Cal.App.4th at p. 579; *Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 843-844 [30 Cal.Rptr.2d 768]; *Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357]; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 217, p. 629.) We are not bound by the trial court's stated reasons or rationale. Instead, we review the summary judgment without deference to the trial court's determination of questions of law. (*Transamerica Ins. Co.* v. *Superior Court* (1994) 29 Cal.App.4th 1705, 1713-1714 [35 Cal.Rptr.2d 259]; *Soules* v. *Cadam, Inc.* (1991) 2 Cal.App.4th 390, 398-399 [3 Cal.Rptr.2d 6], overruled on other grounds in *Turner* v. *Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; *Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) We may consider only those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal. Thus, unless they were factually presented, fully developed and argued to the trial court, potential theories which could theoretically create "triable issues of material fact" may not be raised or considered on appeal. (*Sacks* v. *FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 962-963 [9 Cal.Rptr.2d 306]; *American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 [241 Cal.Rptr. 466].)

III. MALICIOUS PROSECUTION: GENERAL PRINCIPLES

■ In a malicious prosecution action, the plaintiff must prove that the prior action (1) was commenced by or at the defendant's direction and terminated in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon*

*Appel*); *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Leonardini* v. *Shell Oil Co.* (1989) 216 Cal.App.3d 547, 565 [264 Cal.Rptr. 883].) ■ Malicious prosecution is a disfavored action because of the potentially chilling effect it may have on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court for the resolution of conflicts or the redress of a grievance. In our system, litigants have the right to present issues that are arguably correct even if it is extremely unlikely they will win. (*Sheldon Appel, supra,* 47 Cal.3d at p. 872; *Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at p. 566.)

As a result of this public policy, courts have placed strict limitations on the elements of the tort of malicious prosecution, requiring judicial determination of whether the underlying action lacked probable cause. (*Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 159-160 [114 P.2d 335, 135 A.L.R. 775]; *Cooper* v. *Pirelli Cable Corp.* (1984) 160 Cal.App.3d 294, 298 [206 Cal.Rptr. 581]; *Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 922-923 [123 Cal.Rptr. 237].) ■ The plaintiff in a malicious prosecution action must prove each of the necessary elements of the tort, and the trial court must carefully consider the issue of probable cause "so that recovery is not permitted for mere negligence in bringing an action [citation], or simply because the action was not successful [citation]." (*Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at p. 566.)

The probable cause element of a malicious prosecution action requires an objective judicial determination of the "reasonableness" of the defendant's prior lawsuit. The existence or absence of probable cause is a question of law to be determined by the trial court from the facts. The question for the trial court is whether, on the basis of the facts known to the defendant, the prosecution of the prior action was legally tenable. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 868, 875, 886; *Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at p. 567.) When the prior action was objectively reasonable, the malicious prosecution defendant is entitled to prevail regardless of his or her subjective intent. ". . . If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated. [Citations.]" (*Sheldon Appel, supra,* 47 Cal.3d at p. 875.)

■ In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought. A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks

recovery upon a legal theory which is untenable under the facts known to him. In making its determination whether the prior action was legally tenable, the trial court must construe the allegations of the underlying complaint liberally in a light most favorable to the malicious prosecution defendant. (*Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at p. 571.)[7] In all cases, probable cause is to be determined by an objective standard. If any reasonable attorney would have thought the claim made in the prior action tenable, then it is not lacking in probable cause and the defendant is entitled to judgment in the malicious prosecution action regardless of what the defendant's subjective belief or intent may have been. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 878-879, 885-886; *Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at pp. 568-569.)

Evidentiary disputes and factual questions may require resolution before the trial court applies the objective standard to the issue of probable cause. For example, there may be factual issues concerning the information known to the defendant when it brought the underlying action. Thus, the malicious prosecution plaintiff may claim that the defendant was aware of information that established the lack of truth in the factual allegations of the prior complaint. In such circumstances, the jury must resolve the threshold question of the defendant's prior knowledge of the facts before application of the objective probable cause standard. But when there is no issue of material fact regarding what facts were known to the defendant prior to filing the underlying action, then the defendant's subjective belief in the legal validity of the claim is irrelevant. The only question is whether, based upon the defendant's knowledge, the prior action was objectively reasonable. That determination must always be made by the court, and not by the jury. (*Sheldon Appel, supra,* 47 Cal.3d at p. 881; *Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at pp. 569-570.)

---

[7]"Three sound but separate policies compel liberality in construction of the pleadings. First, we have already noted the policy which favors open access to the courts for the resolution of conflicts. This policy is inconsistent with a rigid construction of the prior pleadings to support a malicious prosecution action. Second, the law favors the early resolution of disputes, including voluntary dismissal of suits when the plaintiff becomes convinced he cannot prevail or otherwise chooses to forego the action. This policy would be ill served by a rule which would virtually compel the plaintiff to continue his litigation in order to place himself in the best posture for defense of a malicious prosecution action. [Citation.] Finally, and in any event, in this state pleadings are required to be liberally construed in favor of the pleader. [Citations.] The factual allegations of the complaint are controlling over the title or label given the pleading and over the prayer or demand for relief. [Citation.] In these respects federal rules of pleading are similar. [Citation.] Together these policies compel the conclusion that [the malicious prosecution defendant's underlying] complaint must be construed liberally in determining whether the action was legally tenable." (216 Cal.App.3d at p. 571.)

## IV. CROSS-COMPLAINT SUPPORTED BY PROBABLE CAUSE

 On this appeal, Sangster contends that Cooke and the Festival fabricated key evidence in support of their cross-complaint against Sangster and Wozniak. Specifically, Sangster asserts that the factual allegations in the cross-complaint concerning Sangster's representations to Cooke about the two printing bids on the 1992 Festival program, Cooke's reliance on those representations, and the resulting damages to Cooke and the Festival, were all fabricated. Sangster urges that prosecution of any lawsuit on the basis of fabricated evidence is malicious per se. Thus, she contends, her allegations that Cooke and the Festival fabricated this evidence automatically creates a material issue of fact necessitating a jury trial of her malicious prosecution lawsuit.

Sangster's entire argument is based on the assumption that her bare assertion that respondents "fabricated" evidence to support their cross-complaint is per se sufficient to establish malicious prosecution, or at least to create a triable issue of material fact as to the existence of probable cause. In support of her argument, she cites language from the 1956 Supreme Court decision in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405], to the effect that "[s]ince probable cause requires a reasonable belief in the validity of the claim asserted [citations], the allegations that the action was prosecuted with knowledge of the falsity of the claim are a sufficient statement of lack of probable cause."

Since the Supreme Court's more recent opinion in *Sheldon Appel*, however, this is no longer an accurate statement of the law. In *Sheldon Appel*, the Supreme Court definitively rejected the principle that probable cause requires a "reasonable belief" in the validity of the asserted claim.[8] Whether or not a party subjectively believes in the claim asserted is irrelevant to the existence of probable cause. Instead, the proper inquiry in

---

[8]"[T]he 'probable cause' element in the malicious prosecution tort plays a role quite distinct from the separate 'malice' element of the tort. Whereas the malice element is directly concerned with the *subjective* mental state of the defendant in instituting the prior action, the probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted. [Citation.] Because the malicious prosecution tort is intended to protect an individual's interest 'in freedom from unjustifiable and unreasonable litigation' [citation], if the trial court determines that the prior action was objectively reasonable, the plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause and the defendant is entitled to prevail.

"The . . . 'subjective belief' dictum [citation] alters the probable cause element in a fundamental respect. Under that dictum, even if a trial court finds that, on the basis of the facts known to the defendant attorney, the prior lawsuit *was* objectively reasonable—and thus that the malicious prosecution plaintiff was *not* subjected to an unjustified lawsuit—the court

resolving the question of probable cause is to determine whether the prior action was *objectively* reasonable. If the trial court determines that it was, the malicious prosecution plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause, and the defendant is entitled to prevail. (47 Cal.3d at pp. 877-878; *Downey Venture* v. *LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498 [78 Cal.Rptr.2d 142].)[9]

■ In this case, of course, respondents expressly *deny* that any facts alleged in their underlying cross-complaint were fabricated. At most, then, Sangster's contention of fabrication simply points to a disputed issue of fact. The principal difficulty with Sangster's argument is that it does not address the question before us: that is, whether there are any *undisputed* facts objectively establishing, as a matter of law, that any reasonable attorney would have thought the claims of Cooke and the Festival in the cross-complaint were tenable. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 867-868, 872-877; *Bixler* v. *Goulding* (1996) 45 Cal.App.4th 1179, 1189 [53 Cal.Rptr.2d 246].) ■ Contrary to Sangster's assertion, the fact there may be *some* disputed facts relevant to the merits of the underlying action does not by itself defeat a motion for summary judgment in a malicious prosecution action. If undisputed facts in the record do establish an objectively reasonable basis for bringing the underlying action, the existence of other, allegedly disputed facts is immaterial. (*Hufstedler, Kaus & Ettinger* v. *Superior Court* (1996) 42 Cal.App.4th 55, 62 [49 Cal.Rptr.2d 551].)[10]

■ Here, there *was* undisputed evidence in the possession of respondents prior to the filing of the cross-complaint, and upon which all three

could not properly terminate the [malicious prosecution] action in favor of the defendant so long as the plaintiff presented any evidence raising a question as to whether the defendant attorney subjectively believed in the tenability of the claim. And because the issue of the attorney's subjective belief or nonbelief in legal tenability would rarely be susceptible of clear proof and, when controverted, would always pose a factual question, the dictum would in many cases effectively leave the ultimate resolution of the probable cause element to the jury, rather than to the court." (*Sheldon Appel, supra,* 47 Cal.3d at pp. 878-879, italics in original.)

[9]"The refocus of the probable cause analysis brought about by *Sheldon Appel* has undercut the rule recognized in the older cases that malice could be inferred from the absence of probable cause. [Citations.] Prior to *Sheldon Appel*, such a rule had a logical basis since, as the Supreme Court had previously said, '. . . probable cause requires a *reasonable belief* in the validity of the claim asserted.' (*Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 382, italics added.) The absence of a reasonable belief in the claim, a factor relating to the defendant's *subjective* state of mind, would logically permit an inference that the prior action had in fact been prosecuted for an improper purpose. However, under the standard adopted in *Sheldon Appel*, the factor of a 'reasonable' or 'honest' belief in the claim asserted is no longer relevant to, nor a part of, the court's determination as to the existence of probable cause." (*Downey Venture* v. *LMI Ins. Co., supra,* 66 Cal.App.4th at p. 498, italics in original.)

[10]"[W]here, as here, the record in the underlying action was fully developed, a court can and should decide the question of probable cause by reference to the undisputed facts contained in that record. And where, as here, undisputed evidence establishes an objectively reasonable basis for instituting the underlying action, a 'dispute' about what the [complainant]

causes of action of their cross-complaint were expressly based, that independently established the existence of probable cause to initiate the cross-complaint. It is undisputed that Wozniak testified in his deposition that: (1) Cooke herself told Wozniak directly that she saw no reason for Wozniak to do any work on the 1992 Festival program and that his work was not necessary; (2) other than this one conversation, Wozniak never conversed with Cooke about the 1992 Festival program but took all his directions from Sangster; (3) Sangster told Wozniak that Cooke was "angry" and would not pay Wozniak for his time; (4) Sangster told Wozniak to impose a higher markup on subcontractor invoices billed the Festival in order to cover payments actually going to himself; and (5) because he needed the business, Wozniak followed Sangster's directions, and effectively concealed his own involvement by disguising payments to himself through higher subcontractor markups.

Although Sangster contends Cooke actually knew of Wozniak's active participation in the preparation of the 1992 Festival program, the content of Wozniak's own deposition testimony is *not* disputed. Regardless of the state of Cooke's knowledge, Wozniak's *undisputed* testimony, given *before* respondents filed the subject cross-complaint, and which Wozniak repeated and affirmed in his trial testimony, provides sufficient evidence to support an inference that Wozniak and Sangster intentionally concealed the full extent of Wozniak's involvement in the preparation of the 1992 Festival program by disguising his fees and commissions through the use of inflated markups on subcontractor invoices. A reasonable attorney, presented with Wozniak's deposition testimony, interrogatory answers, and the subcontractor invoices Wozniak admittedly altered at Sangster's direction, could reasonably believe that Sangster and Wozniak intended to and did defraud Cooke and the Festival, notwithstanding any disputes of fact concerning other evidence. Viewed objectively, this evidence clearly established probable cause for all three of the causes of action alleged in the underlying cross-complaint, and thus provided an objectively reasonable basis for instituting that cross-complaint against Wozniak and Sangster. We conclude that Sangster has failed to meet the threshold requirement for this malicious prosecution action of demonstrating an absence of probable cause, and respondents are therefore entitled to prevail on their motion for summary judgment.

## V. ELEMENTS OF FRAUD CAUSE OF ACTION

Undeterred, Sangster contends that summary judgment was improper because respondents failed to offer any specific evidence to support three of

knew or did not know at the time [her or she] filed the underlying action is irrelevant." (42 Cal.App.4th at p. 62.)

the essential elements of a cause of action for fraud: misrepresentations, detrimental reliance, and damages. Once again, Sangster's contentions are without merit.

## A. Fraudulent Concealment

Wozniak's deposition testimony, given before respondents filed the cross-complaint, contains sufficient evidence to support objective conclusions that: (a) Wozniak and Sangster intentionally concealed Wozniak's involvement in the production of the 1992 Festival program by secretly marking up subcontractor invoices billed to the Festival so that Wozniak could be paid without the knowledge of Cooke or the Festival; and (b) this resulted in higher costs to the production of the 1992 Festival program than were contained in the original estimates and bids. Although the cross-complaint was pleaded in three separate counts (conspiracy to defraud, negligent misrepresentation and breach of fiduciary duty), the entire cross-complaint is based on a single underlying claim: that Sangster and Wozniak fraudulently colluded to conceal Wozniak's involvement in producing the 1992 program by hiding Wozniak's fees in undisclosed, excessive markups of subcontractors' invoices. The conduct of Wozniak and Sangster, as evidenced by Wozniak's deposition testimony and interrogatory answers, is the single factual claim on which all three causes of action in the cross-complaint are based. (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 584-586 & fn. 3 [71 Cal.Rptr.2d 657] [in malicious prosecution action based on underlying complaint alleging two separate causes of action for fraud and conspiracy to defraud, two causes of action treated as single claim that plaintiffs unlawfully colluded to defraud the defendant].)

Sangster contends that respondents failed to establish probable cause for the underlying cross-complaint because there is no undisputed evidence of affirmative misrepresentations on her part. In support of her argument, Sangster focuses on disputes of fact surrounding her alleged misrepresentations regarding the two initial bids to produce the program for approximately $17,600 and $14,600, respectively.

Sangster's arguments on this point are unconvincing. She ignores the fact Wozniak's undisputed deposition testimony and interrogatory answers contain evidence of both misrepresentations and active fraudulent concealment of material information by a fiduciary, concerning the extent of Wozniak's direct involvement in and hidden payments for producing the 1992 program. It is *this* evidence which provides probable cause for the three causes of action in the cross-complaint. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 697-703, pp. 799-805.) In short, there is no merit to Sangster's assertion that respondents failed to present evidence of fraud or breach of fiduciary duty.

## B. *Reliance*

 In establishing the reliance element of a cause of action for fraud, it is settled that the alleged fraud need not be the sole cause of a party's reliance. Instead, reliance may be established on the basis of circumstantial evidence showing the alleged fraudulent misrepresentation or concealment *substantially influenced* the party's choice, even though other influences may have operated as well. (*Hunter* v. *McKenzie* (1925) 197 Cal. 176, 185 [239 P. 1090]; *Peskin* v. *Squires* (1957) 156 Cal.App.2d 240, 249-250 [319 P.2d 405]; Rest.2d Torts, § 546; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 711, pp. 810-811.) Here, respondents offered Cooke's testimony that she did not want Wozniak to work on the 1992 Festival program, as well as Wozniak's own testimony that he inflated the markup on subcontractor invoices after he learned from Sangster that Cooke would not otherwise pay him to work on the 1992 program. This circumstantial evidence goes to establishing that Wozniak and Sangster conspired to conceal Wozniak's involvement in the 1992 program from Cooke and the Festival, and that this active concealment substantially influenced Cooke's actions. We conclude it constitutes sufficient evidence to establish the element of reliance.

## C. *Damages*

With regard to damages, Sangster contends respondents lacked probable cause to bring their cross-complaint because Cooke never paid Wozniak's bill for the 1992 program, and respondents' claim for damages was therefore insupportable as a matter of law. Sangster's argument fails to take account of the circumstances of the cross-complaint in the underlying litigation, and is without merit.

Sangster insists Cooke and the Festival cannot demonstrate damages because (1) they received programs worth *"more than double* the amount Sangster allegedly represented" they were worth; and (2) they never paid anything for them in any event. (Italics in original.) In so arguing, Sangster necessarily takes the position that it is not fraud knowingly to underbid a contract intending to add on costs later, and that the victim of such a practice suffers no damages and must pay the ultimate price without complaint. By this line of reasoning, a person has no remedy at all if he or she accepts a low bid on a contract for goods or services to be rendered, where the bidder has intentionally concealed material details about the way he or she intends to perform the contract and subsequently submits a bill double the amount of the bid on the basis of excessive and undisclosed markups.

Sangster's argument is meritless on its face. It was originally Wozniak who sued Cooke and the Festival alleging breach of contract and seeking ·

payment for his services. In the course of that lawsuit, Wozniak gave undisputed deposition testimony and interrogatory answers admitting that: (1) Cooke had told him directly he was not to be involved in designing the program; (2) Sangster later reaffirmed this by telling him Cooke would not pay him for his work on the program; and (3) on Sangster's directions, Wozniak inflated the markups on subcontractor invoices so he could recover his own fees without billing the Festival directly for them. As seen, this evidence provided probable cause on the basis of which a reasonable attorney would have objective grounds for concluding Cooke had a cause of action against Wozniak and Sangster for fraud, based on their conspiracy to conceal Wozniak's involvement in the 1992 Festival program by disguising his commissions through inflated markups on the invoices of third party subcontractors.

 Fraud is a well-established defense to an action for breach of contract. It may be invoked by way of either affirmative defense or cross-complaint. (*Nevada Land & Inv. Corp.* v. *Sistrunk* (1934) 220 Cal. 174, 178 [30 P.2d 389]; *Pavlovich* v. *Neidhardt* (1954) 128 Cal.App.2d 559, 561 [275 P.2d 836]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 726, pp. 825-826; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 1016, pp. 468-469.) The damages of the victim of a fraudulent contract are the excessive charges the victim is asked to pay. When sued on the contract by the bidder, one remedy of the defrauded victim is to plead fraud, either by way of affirmative defense or countersuit. In the latter case, the defrauded victim's performance of the underlying contract is not a condition to his or her maintaining a countersuit for fraud and deceit. Instead, by filing suit on the fraud, the defrauded party may affirm the contract without waiving the right to damages or having to prove willingness or ability to perform, and withhold any payment in order to offset or recoup his or her damages. (*Garrett* v. *Perry* (1959) 53 Cal.2d 178, 182 [346 P.2d 758]; *Paolini* v. *Sulprizio* (1927) 201 Cal. 683, 685-687 [258 P. 380]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 726, pp. 825-826.)

In this case, the benefit of the bargain to Cooke and the Festival was to receive the 1992 program at a lower cost without the use of Wozniak's services. By this measure, their damages would consist of at least that amount of the cost to produce the 1992 program which was attributable to Wozniak's concealed "commission" markups. Cooke and the Festival could also seek damages for the costs incurred in defending Wozniak's action, including loss of time, attorney fees, and any other expenditures suffered or incurred. (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620-621 [30 Cal.Rptr. 821, 381 P.2d 645].)

 To sum up, respondents were not required to succeed on their cross-complaint or their claim for damages in order to establish their probable cause for bringing that action against Sangster. It was only necessary

that there be undisputed evidence on the basis of which a reasonable attorney would have thought a claim for damages was objectively tenable. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 875-882, 884-886.) In this case, we conclude that there was.

## VI. DISPOSITION

We hold that respondents have demonstrated that there is no triable issue of *material* fact as to the existence of probable cause for Cooke and the Festival to institute the underlying cross-complaint, and Sangster's malicious prosecution action against respondents arising out of that cross-complaint was barred as a matter of law. Thus, the trial court was correct in granting summary judgment in respondents' favor.

In view of our decision, we do not address respondents' contention that (a) the arbitrator's previous award to Cooke and the Festival established the existence of probable cause to bring their cross-complaint as a matter of law, and (b) Sangster's malicious prosecution action against Cooke was barred by the statute of limitations.

The judgment is affirmed. Appellant Sangster shall pay respondents' costs on appeal.

Poché, Acting P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 17, 1999.