Filed 7/1/24 Tulette v. City of El Segundo CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JAMES TULETTE, | B332060 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV44023) |
| v. | |
| CITY OF EL SEGUNDO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Colin P. Leis, Judge.  Affirmed.

Lipeles Law Group, Kevin A. Lipeles, Thomas H. Schelly and Julian Bellenghi for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Jennifer M. Rosner, Joung H. Yim and Marek Pienkos for Defendants and Respondents.

*  *  *  *  *  *

A firefighting captain sued his fire department for retaliation and age discrimination.  The trial court granted summary judgment for the department after finding that he suffered no adverse employment action as a matter of law.  This was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts[1]

#### A.  *Employment history*

James Tulette (plaintiff) was born in October 1967.  In August 1991, he joined the El Segundo Fire Department (the Department) as a firefighter.  By 2010, he had risen to the position of captain, which is the third-highest position in the Department behind battalion chief and fire chief.

Plaintiff engaged in several unpaid and voluntary extracurricular activities with the Department.

First, plaintiff participated in the Department's Urban Search and Rescue (USAR) program.  That program provides "advanced lifesaving rescue assistance during natural or manmade disasters."  Participation in the program is voluntary, unpaid, and has no impact on a firefighter's position within the Department.  Plaintiff started participating in 1993; in 2010, he was named the Department's USAR "program coordinator."

Second, plaintiff trained other firefighters as part of the Department's training cadre.  Serving as a training officer is also

---

1      We have construed any conflicts in the evidence in favor of the party opposing summary judgment, which renders those conflicts immaterial.  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717 (*Wilson*).)

2

voluntary, unpaid, and has no impact on a firefighter's position within the Department.

Third, plaintiff participated in a "grant committee" tasked with applying for grants to obtain additional firefighting equipment.[2] This service is also voluntary, unpaid, and has no impact on a firefighter's position within the Department.

## B.   *Plaintiff's report of a fraud scheme*

In January 2020, plaintiff began to suspect that one of the Department's battalion chiefs and its fire chief were engaged in a "scheme" to obtain emergency response supplies from a fund created by a federal consent decree that the decree did not allow.

Plaintiff reported this to the battalion chief in January 2020.  He reported it to human resources in April 2020.[3]

An outside investigator later concluded that plaintiff's allegations were unfounded.

## C.   *Change in plaintiff's volunteer positions*

Following plaintiff's report, three pertinent events occurred.

---

[2]    There is a dispute over whether a singular "grant committee" ever existed.  However, we will assume for the sake of addressing plaintiff's claims that the committee indeed existed.

[3]    Again, there is a dispute over whether plaintiff made the January 2020 report, as that assertion appeared for the first time in plaintiff's declaration opposing summary judgment and contradicted plaintiff's earlier representations that his sole report was to human resources in April 2020.  (See *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12 ["a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses"].)  However, we will resolve the conflict in plaintiff's favor.

First, the battalion chief took over as USAR "program coordinator." Plaintiff was given the title of USAR "program advisor," and was still a member of the USAR program. However, plaintiff elected not to participate.

Second, the fire chief changed the platoon assignments of 12 Department firefighters, which had the effect of removing plaintiff from the training cadre.

Third, plaintiff stopped doing work for the "grant committee."

Plaintiff believes his positions in these activities were given to younger employees.

## II. Procedural Background

On November 17, 2020, plaintiff sued the Department—specifically, the City of El Segundo and its fire chief—for (1) whistleblower retaliation under Labor Code section 1102.5, and (2) age discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

The Department moved for summary judgment on the ground that, as relevant here, the three pertinent events regarding plaintiff's extracurricular activities in the Department did not amount to an "adverse employment action" as a matter of law. Following further briefing and a hearing, the trial court issued an order on February 21, 2023 granting the motion. The court reasoned that any change in plaintiff's voluntary activities did not constitute an adverse employment action because none of them bore "on his job performance or opportunities for advancement" and because plaintiff's claim that his "future employment prospects" were harmed was "speculative."

Following the entry of judgment for the Department, plaintiff timely appealed.

4

**DISCUSSION**

Plaintiff argues that the trial court erred in granting summary judgment for the Department on his employment claims.

## I.    Pertinent Law

### A.    *Summary judgment*

Summary judgment is appropriate when the moving party (usually the defendant) shows it "is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The moving party bears the initial burden of disproving an element of the plaintiff-employee's prima facie case; if it carries that burden, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact by producing "substantial responsive evidence." (*Id.*, subds. (o)(1) & (p)(2); *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163; *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 500; *Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415; see also *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 862 [when burden shifts to plaintiff-employee to prove unlawful motive under FEHA, plaintiff must produce "'substantial responsive evidence'"]; *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 591-592 [same].) While we liberally construe the evidence before the trial court in support of the party opposing summary judgment and resolve all doubts concerning the evidence in support of that party (*Wilson*, *supra*, 42 Cal.4th at p. 717; *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39), a plaintiff's "responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact" (*Sangster*, at p. 163).

We review the grant of summary judgment de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.[4] (*California Medical Assn. v. Aetna Health of California, Inc.* (2023) 14 Cal.5th 1075, 1087; *Wilson, supra*, 42 Cal.4th at pp. 716-717.)

## B.    *Adverse employment action*

An essential element of both a whistleblower retaliation claim and a FEHA age discrimination claim is that the plaintiff-employee suffered an "'adverse employment action'" because of, respectively, the employee's report of unlawful conduct or the employee's age.  (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468 [retaliation]; *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 424 [age discrimination].)  The legal definition is the same for both types of claims.  (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1381 (*Patten*), disapproved on other grounds by *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718, fn. 2.)

Although the archetypical "adverse employment action" is an employer's act of firing, demoting, or refusing to promote an employee, the term also reaches actions by an employer that "materially" and "adverse[ly]" "affect the terms and conditions of employment" because those actions are "reasonably likely to impair a reasonable employee's" (1) "job performance," or (2) "prospects for advancement or promotion" at the employee's current job or in their career.  (*Yanowitz v. L'Oreal USA, Inc.*

_____

[4]    The Department lodged 139 evidentiary objections to plaintiff's evidence in the trial court, but the court declined to rule on those objections.  Because the Department's renewal of those objections on appeal is cursory, we decline to address them.

(2005) 36 Cal.4th 1028, 1036, 1053-1055.)[5] Materiality is adjudged *objectively* and *collectively*. (*Id.* at pp. 1054-1056; *Francis v. City of Los Angeles* (2022) 81 Cal.App.5th 532, 541; *McRae v. Dept. of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 393 (*McRae*).) Thus, actions that subjectively bruise an employee's ego, cause humiliation, ostracize the employee in the workplace, or are not to an employee's liking do *not*, without more, constitute adverse employment actions. (*Yanowitz¸* at p. 1054, fn. 13 ["'bruised ego'" insufficient]; *id.* at pp. 1053-1054 ["a mere offensive utterance or . . . a pattern of social slights" insufficient]; *id.* at pp. 1054-1055 ["[m]inor or relatively trivial . . . actions . . . reasonably likely to do no more than anger or upset an employee" insufficient]; *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 318 (*St. Myers*) ["""change that is merely contrary to the employee's interests or not to the employee's liking"""" insufficient"]; *Light v. Dept. of Parks & Recreation* (2017) 14 Cal.App.5th 75, 92 (*Light*) ["'[m]ere ostracism in the workplace'" insufficient].) Although the adverse-action element must be interpreted "liberally" (*Yanowitz*, at p. 1054), the element is not so broad as to "'thrust [courts] into the role of personnel officers'" or require courts to """"micromanage[] [employers'] business practices.""""" (*McRae*, at p. 387.)

## II. Analysis

The trial court properly concluded that plaintiff did not suffer an adverse employment action as a matter of law.

---

[5] Because California law does not require that an "adverse employment action" cause a "'significant'" employment disadvantage, the United States Supreme Court's rejection of the significance requirement in *Muldrow v. City of St. Louis* (2024) __ U.S. __, __ [144 S.Ct. 967, 971-972], is irrelevant.

Plaintiff identifies three actions that he claims constitute adverse employment actions—namely, (1) he became the USAR "program *advisor*" when the battalion chief took over his title of USAR "program *coordinator*"; (2) he was "removed" from the training cadre when the fire chief changed platoon assignments for several firefighters; and (3) he was "excluded" from the grant committee.[6]

Whether viewed separately or collectively, we independently conclude as a matter of law that these actions do not constitute adverse employment actions. It is undisputed that plaintiff's position as USAR program coordinator, as a member of the training cadre, and as a member of the grant committee were voluntary, unpaid, and had no impact on his status or duties as a captain with the Department. It is also undisputed that the change in plaintiff's position to USAR program advisor and his removal from the training cadre and grant committee in no way impacted his job duties, compensation, hours, seniority, or other conditions of his employment. (See *Flaherty v. Gas Research Institute* (7th Cir. 1994) 31 F.3d 451, 457 [semantic change in

---

[6] Plaintiff did not plead the second and third actions as adverse employment actions in his complaint, which ostensibly bars him from relying on them to oppose summary judgment. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 499.) However, because the Department overlooked that forfeiture by addressing those actions in its moving papers, we will do the same.

Plaintiff argued in his summary judgment opposition that negative performance reviews he received constituted a fourth adverse employment action; he had not alleged that action in his complaint. Because plaintiff has abandoned his reliance on the reviews on appeal, we will not consider them further.

title and a "bruised . . . ego" not adverse action where pay and benefits remained the same]; *Malais v. Los Angeles City Fire Dept.* (2007) 150 Cal.App.4th 350, 358 [limitation to "special duty assignments" not adverse action where employee was merely "dissatisfied with . . . the work, schedule, and camaraderie"]; cf. *Strother v. Southern Cal. Permanente Medical Group* (9th Cir. 1996) 79 F.3d 859, 869 [exclusion from extracurricular activities may be adverse action if such activities put employee "in a position for merit pay increases"].)  Individually and collectively, these changes at most altered the scope of plaintiff's work-adjacent extracurricular activities; because the changes had no concomitant effect on his job, they do not constitute an adverse employment action as a matter of law.  (*Leon v. Dept. of Education* (E.D.N.Y. 2014) 16 F.Supp.3d 184, 202 ["exclusion from certain extracurricular school activities" not adverse action], overruled in part on other grounds by *Leon v. New York City Dept. of Education* (2d Cir. 2015) 612 Fed.Appx. 632; *Drakeford v. Ala. Cooperative Extension System* (M.D.Ala. 2006) 416 F.Supp.2d 1286, 1314-1315 ["complain[t] about what is essentially an extracurricular activity" that "has little if any impact on [employee's] job responsibilities, pay, or benefits" not adverse action where employee must "ask permission to perform a function that falls outside of [his] job scope"]; cf. *Shapiro v. New York City Dept. of Education* (S.D.N.Y. 2008) 561 F.Supp.2d 413, 423 [negative performance review along with removal from extracurricular activities may constitute adverse action].)

Plaintiff resists this conclusion with what boils down to three arguments.

First, he argues that his change in title on the USAR program, removal from the training cadre, and removal from the

9

grant committee caused him to suffer "depression," "humiliat[ion]," "significant emotional distress," and "other emotional maladies" that "affected his ability to perform" as a captain. As noted above, plaintiff's subjectively hurt feelings do not constitute an adverse employment action. (*Yanowitz, supra*, 36 Cal.4th at p. 1054; *Light, supra*, 14 Cal.App.5th at pp. 91-92; see also *McRae, supra*, 142 Cal.App.4th at p. 386 [not every "''action that an irritable, chip-on-the-shoulder employee [does] not like''" can form the basis of a FEHA suit]; *St. Myers, supra*, 44 Cal.App.5th at pp. 308-309 [experiencing "depress[ion]" not enough].) Plaintiff points to language in *Yanowitz* that adverse employment actions may "impose an economic detriment" or "inflict a tangible psychological injury" upon an employee (*Yanowitz*, at p. 1052), but this language discusses the *possible effects* of an adverse employment action; *Yanowitz* does not purport to make an employee's subjective "psychological injury" *itself* an adverse employment action. Although the infliction of psychological injury severe enough to constitute "harassment" to a reasonable employee may constitute an adverse employment action (see *Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 212 [harassing behavior can constitute adverse employment action for purposes of retaliation claim]; *Yanowitz*, at p. 1053; *Light*, at p. 92), plaintiff has not pled, argued, or adduced any evidence to show he was subjected to objective harassment under FEHA.

Second, plaintiff argues that the Department's actions in "stripp[ing] [him] of three prestigious positions" will negatively affect his post-retirement career. Although adverse employment actions *can* include actions that reach beyond the effects on a plaintiff's current job if they "adversely and materially affect" the

10

plaintiff's "prospects" for "career" "advancement" (*Yanowitz, supra*, 36 Cal.4th at pp. 1054-1055), plaintiff did not submit *substantial* evidence that the changes in his participation in these three extracurricular activities would have such a material and adverse effect. All we have is plaintiff's assertion that his "ability to teach . . . in the USAR world" after retirement from the Department "has been affected."[7] Plaintiff provides no explanation for *why* or *how* it has been affected, which is critical because plaintiff would still be retiring from the Department with a distinguished 30-year career and at the rank of captain after many years of service as USAR program coordinator, a member of the training cadre, and a participant in the grant committee. Without more, plaintiff's naked assertion about what might happen in the future is speculation, not substantial evidence. (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286 ["""""[b]y definition, 'substantial evidence' requires *evidence* and not mere speculation"""""]; *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 526 [dispute of fact "'is not raised by "cryptic, broadly phrased, and conclusory assertions" [citation], or mere possibilities'"]; see *Sharon v. Porter* (2019) 41 Cal.App.5th 1, 7 [no injury if it causes only """speculative harm[] or the threat of future harm"""]; see also *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1162 [adverse action affects an employee, "not a former employee"].)

---

**7**      In the trial court, plaintiff also claimed that the battalion chief made "disparaging comments" about him to officials at a fire academy that "diminished [p]laintiff's prospect of future employment at that agency." On appeal, plaintiff has abandoned that claim (which, in any event, appears relevant to a defamation claim rather than a FEHA claim).

Third and lastly, plaintiff argues that several cases support his position that he has raised a triable issue of material fact as to whether his diminution or loss of extracurricular participation constitutes an adverse employment action. He is wrong because the cases he cites all deal with the employer's actions that negatively affected the employee's official position and duties. (*Simers v. Los Angeles Times Communications LLC* (2018) 18 Cal.App.5th 1248, 1279-1280 [journalist's "job reassignment" from "prestigious" and "different" position of columnist to reporter; adverse employment action]; *Patten, supra*, 134 Cal.App.4th at pp. 1389-1390 [school principal's "lateral" transfer from underperforming school to high-achieving school, when such a transfer would be viewed "unfavorably" and as a "demotion"; adverse employment action]; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 374 [police lieutenant's removal from top of chain of command and from law enforcement duties; adverse employment action]; *White v. Burlington Northern & Santa Fe Railway Co.* (6th Cir. 2004) 364 F.3d 789, 803-804 [forklift operator's reassignment to "standard track laborer" position where forklift operator position carried more "prestige," "required more qualifications," and was "objectively considered a better job"; adverse employment action].) Here, in contrast, plaintiff failed to show how the change in his job-adjacent activities affected his position as a captain.

\*     \*     \*

In light of our conclusion that plaintiff's claims fail for lack of an adverse employment action, we need not reach the parties' further arguments regarding the other elements of plaintiff's claims.

12

## DISPOSITION

The judgment is affirmed.  The Department is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST


13