Lillie LEON, Plaintiff,

v.

The **DEPARTMENT OF EDUCATION,** a/k/a The City School District of the City of New York; Paula Cunningham, in her Individual and Official capacities; Nerida Urban, in her Individual and Official capacities; and Harvey Katz, in his Individual and Official capacities, Defendants.

No. 10–CV–2725.

United States District Court, E.D. New York.

Signed April 29, 2014.

186

Stewart Lee Karlin, The Law Offices of Stewart Lee Karlin P.C., New York, NY, Alexander T. Coleman, Michael J. Borrelli, Borrelli & Associates, Carle Place, NY, for Plaintiff.

Andre Leon Lindsay, Jeremy Ian Huntone, NYC Law Department, James L. Hallman, Shakera Khandakar, New York City Law Department, Office of the Corporation Counsel, New York, NY, for Defendants.

## DECISION AND ORDER

WILLIAM F. KUNTZ, II, District Judge.

This action arises out of Plaintiff's allegedly wrongful termination from Public School 117 ("P.S. 117") in 2011. At the time the Amended Complaint was filed, Plaintiff Lillie Leon was an 80–year–old tenured teacher. Plaintiff alleged that Defendants, New York City Department of Education ("DOE"), and three former and current school officials, violated a number of federal, state, and municipal laws by discriminating against her on the basis of her age and disabilities. Defendants DOE and Paula Cunningham [1] now move to dismiss Plaintiff's Amended Complaint.

Plaintiff has already litigated the cause of her 2011 termination from P.S. 117 in State Court proceedings (the "State Proceedings"). The State Proceedings concluded that Plaintiff was dismissed for insubordination and neglect of her duties, not because of unlawful discrimination. Plaintiffs claims, as they relate to her 2011 termination, are collaterally estopped from relitigation in this Court. Furthermore, Plaintiff's First Amendment and pre–2010 discrimination claims fail as matter of law. Finally, this Court declines to exercise supplemental jurisdiction over Plaintiff's municipal code and state-law tort claims in the absence of a surviving federal cause of action. Accordingly, Defendants' motion to dismiss is granted in its entirety.

---

1. Defendants Nerida Urban and Harvey Katz are no longer employees of the DOE and are therefore not represented by Corporation Counsel. Urban and Katz have not answered or otherwise responded to the Amended Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Amended Complaint (Dkt. 39 ("Compl.")). These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to Plaintiff, the non-moving party. *See Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007). The Court also takes judicial notice of court documents relating to Plaintiff's prior state and federal court actions in order to describe the procedural posture of this case. *See Swiatkowski v. Citibank*, 745 F.Supp.2d 150, 156 (E.D.N.Y.2010) (Bianco, J.).

### A. *Plaintiff's Pre–2010 Allegations*

At the time the Amended Complaint ("Compl.") was filed, Plaintiff was 80 years old and, at all relevant times, she was employed by the DOE at P.S. 117. (Compl. ¶ 6). Plaintiff had been employed by the DOE since 1978. (*Id.* at ¶ 16). Plaintiff suffered from severe arthritis in her knees that limited her ability to walk, as well as allergies that limited her ability to breathe in cold climates. (*Id.* at ¶¶ 87–88). Plaintiff provided Defendants medical documentation in May and June 2008 concerning her disabilities. (*Id.* at ¶¶ 38, 40).

Plaintiff previously sued the New York City Board of Education in June 2003, alleging that the DOE violated the Age Discrimination in Employment Act ("ADEA") by treating younger employees more favorably. (*Id.* at ¶ 21). That suit settled in Plaintiff's favor in July 2006. (*Id.* at ¶ 23). Plaintiff now alleges that Defendants began discriminating and retaliating against her because she filed the federal lawsuit. (*Id.* at ¶ 22).

According to Plaintiff, Defendants began a "campaign to force Plaintiff to retire" during the pendency of the lawsuit and beyond the settlement. (Dkt. 47, (Plaintiff's Memorandum in Opposition to the Motion to Dismiss ("Pl.'s Br.")) at 7).[2] This campaign included inquires as to when Plaintiff would retire in 2005 and 2008, (Compl. ¶¶ 27, 41); requests that Plaintiff sign a statement indicating her intended date of retirement, (*id.* at ¶ 28); the use of profanities and false accusations against Plaintiff, (*id.* at ¶ 31); and "a continuous pattern of severe harassment, hostile working environment, retaliation, humiliation, and intimidation." (*Id.* at ¶ 29).

Additionally, Plaintiff alleges that she was denied her first choice teaching assignments for the 2008–09 and 2010–11 school years, even though her seniority should have given her priority. (*Id.* at ¶¶ 34, 47, 66–67). Furthermore, Plaintiff alleges that unfounded disciplinary letters were placed in bad faith into her personnel file in April and May 2008, in an effort to have Plaintiff terminated. (Compl. ¶ 34). Plaintiff claims that in response to her complaints about the disciplinary letters, she was given an unsatisfactory "U"—for the first time in career—in her 2007–08 Annual Performance Evaluation. (*Id.* at ¶¶ 35–37). Plaintiff alleges that she was required to write out long lesson plans in September 2008, a task not required of tenured or younger teachers. (*Id.* at ¶ 43).

Plaintiff alleges that in October 2008, Defendants placed two "known severely troublesome students" into her class as part of the alleged campaign to force her into retirement. (*Id.* at ¶ 46). Plaintiff alleges that later in the 2008–09 school year, she was not provided proper testing materials, (*id.* at ¶ 49), a letter of dedication to her students was omitted from a

---

**2.** This document is titled "Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment," but in fact opposes the Motion to Dismiss. (*See* Dkt. 49).

Moving–Up Ceremony program, and her class was excluded from a field trip to Barnes & Noble. (*Id.* at ¶ 51). On March 17, 2009, Plaintiff filed a charge of discrimination against the school with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 50). Plaintiff also alleges that similar conduct occurred during the 2009–10 school year whereby her class was excluded from a playground equipment ribbon ceremony and had a field trip canceled. (*Id.* at ¶¶ 52, 55).

**B. *The 2010–11 School Year***

Plaintiff brought her initial complaint in this action on June 15, 2010, alleging the events discussed above. (Dkt. 1). In 2011, Plaintiff filed the Amended Complaint alleging that she was subject to further discrimination by the Defendants during the 2010–11 school year. The Amended Complaint alleged that "Defendants intensified their retaliation and discrimination of Plaintiff in order to force her to retire or to terminate her" during the 2010–11 school year. (Pl.'s Br. at 3); (Compl. ¶ 56). Plaintiff's allegations of discrimination during that school year began with her assignment to teach twenty-five Kindergarten students in a classroom without an in-class bathroom ("Room 113"). (Compl. ¶ 57). This required Plaintiff to "bathroom"[3] her students. (*Id.* at ¶¶ 57, 59). Plaintiff also alleged that Room 113 lacked age-appropriate furniture. (*Id.* at ¶ 63). In Fall 2010, Plaintiff contacted the parents of her students and raised accusations that the classroom was filthy, lacked an attached bathroom, and lacked age-appropriate furniture. (*Id.* at ¶ 64).

In response to Plaintiffs conduct, including her refusal to accept any of the alternative teaching assignments offered in lieu of teaching Kindergarten in Room 113, Defendants brought New York Educ. Law § 3020–a charges against Plaintiff citing eight "specifications," or charges of misconduct, arising out of the events of the 2010–11 school year. (Dkt. 48–1 (Decl. of Shakera Khandakar Exhibit A, Opinion and Award in *New York City Dep't of Ed. v. Leon,* SED File No. 17, 318 (July 15, 2011)) ("Ex. A") at 3–4).[4] Plaintiff alleges that these proceedings were initiated by Defendants as part of their continued attempts to "retaliate, discriminate, harass and intimidate Plaintiff." (Pl.'s Br. at 4 (citing Compl., ¶ 76)).

**C. *The 3020–a Proceeding***

On July 15, 2011 the Hearing Officer in the 3020–a proceeding issued the final Opinion and Award. (Ex. A at 1). After three days of evidentiary hearings, the record was closed, and all events up to May 15, 2011 were considered. (*Id.* at 2). According to the Opinion, "[b]oth parties were represented by counsel and had a full and fair opportunity to present evidence and argument, to engage in the examination and cross-examination of witnesses, and otherwise to support their respective positions." (*Id.* at 2).

The 3020–a proceedings charged Plaintiff with "insubordination, neglect of duty, [and] conduct unbecoming her position[.]"

---

3. "Bathroom" is used as a verb by both parties in this litigation to describe the task of escorting students to the restroom during instructional time.

4. The Court considers Defendants' exhibits in deciding the motion to dismiss because Plaintiff referred to the documents in the Amended Complaint, the documents are in Plaintiff's possession, and they are documents that Plaintiff had knowledge of and relied upon in filing the Amended Complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (finding that plaintiff's reliance on a document in drafting a complaint is the most significant factor for a court to consider in looking beyond the four corners of the complaint on a motion to dismiss).

(*Id.* at 3). The eight "specifications" against Plaintiff included:

> "*Specification 3:* Beginning on or about September 13–15, 2010, [Plaintiff] refused to 'bathroom' the students in her assigned Kindergarten class 113, as directed.
>
> *Specification 4:* On or about September 12, 2010, [Plaintiff] contacted parents of kindergarten class 113, without authorization from the Principal, regarding [Plaintiff's] claims against the school and told them in sum and substance that classroom 113 was:
>
> 1. Filthy
> 2. Without a bathroom
> 3. Unsuitable for children
> 4. With furniture that was not age appropriate.
>
> *Specification 5:* Beginning on or about September 13, 2010, [Plaintiff] informed parents around dismissal time, in sum and substance, that:
>
> 1. I will not take your children to the bathroom.
> 2. I am not a babysitter.
>
> *Specification 6:* Beginning on or about September 20, 2010, [Plaintiff] refused the Principal's directive that [Plaintiff] teach newly assigned kindergarten class 133.
>
> *Specification 7:* On or about November 22, 2010, [Plaintiff] refused the Principal's directive that [Plaintiff] conduct a tutoring teaching assignment called "Circular 6" in room 358.
>
> *Specification 8:* [Plaintiff] failed to report to her designated assignment on or about September 20, 2010 through March 11, 2011, as directed."

(Ex. A at 3–4).

The Hearing Officer ultimately concluded that there was just cause for Plaintiff's termination as she was insubordinate, neglected her duties, was unfit to perform her obligations, violated by-laws, rules, or regulations of the Chancellor, engaged in conduct unbecoming a teacher, and was incompetent and inefficient in her service. (Ex. A at 4).

Among the relevant issues decided by the Hearing Officer were:

*Background*

- Plaintiff did not request an accommodation for air conditioning for the 2010–11 school year. Plaintiff was informed that she would need to do more than submit a letter to the principal and that an accommodation request needed to be made to the Medical Bureau. (*Id.* at 10).

*Specification 3*

- Plaintiff ignored numerous written and verbal directives that she was to bathroom her students. (*Id.* at 26). Plaintiff was in a classroom without a bathroom because the administration had attempted to defer to her health concerns about air conditioners. (*Id.* at 23). Plaintiff was physically able to monitor bathrooming and was aware that this was part of the responsibilities of a kindergarten teacher. (*Id.* at 24–25).

*Specification 4*

- The manner and substance of the messages left by Plaintiff to her students' parents were "alarming" and inappropriate because she did not advise the administration of her issues before reaching out to the parents. (*Id.* at 26–27). Those actions were "unprofessional and unbecoming her position and the [DOE] had just cause for discipline." (*Id.* at 27).

*Specification 6*

- Principal Cunningham moved Plaintiff to air-conditioned Room 133 because of Plaintiff's refusal to bathroom students and her contacting of the students' parents. (*Id.* at 28–29). Plaintiff was to blame for being put in Room 133 and nonetheless refused to provide instruction in Room 133, ignored directives to report to that classroom, and engaged in continuing insubordination. (*Id.* at 29). There were no safety issues with the classroom justifying Plaintiff's refusal to teach. (*Id.* at 29). "Although [Plaintiff] testified that air conditioning made her hoarse and that she had previously submitted a doctor's note to the prior principal, she did not apply for an accommodation for air conditioning from the Medical Bureau. Although the Principal initially deferred to [Plaintiff's] preference for the old wing, she was not prohibited from assigning [Plaintiff] to the new wing. In an attempt to appease her, Principal Cunningham offer to turn off the air conditioning in the room. Even so, [Plaintiff] still refused to teach in Room 133[.]" (*Id.* at 29).

*Specification 7*

- When Plaintiff was assigned and then refused a third teaching assignment in Room 358 during the 2010–11 school, "[t]he totality of the evidence support[ed] the finding that [Plaintiff] had no reasonable basis for her belief that assignment to Room 358 posed a threat to her health or safety." (*Id.* at 30). Plaintiff was given three warnings to report to her assignment in Room 358, and her failure to adhere to those directives constituted insubordina-

tion and warranted discipline. (*Id.* at 32–33).

*Specification 8*

- After being deemed fit for duty, Plaintiff was given the option to teach a tutoring course ("Circular 6") in the cafeteria. (*Id.* at 33). Plaintiff refused to teach there for "safety" reasons, even though there was no reasonable imminent harm. (*Id.* at 34). Plaintiff was found guilty of failing to report to any of her designated assignments between September 20, 2010 and May 11, 2011. (*Id.* at 35).

*Summary*

- Overall, Plaintiff attempted to justify her numerous insubordinate acts by claiming that there were health and safety reasons excusing her non compliance. However, those Plaintiff's excuses were "unsubstantiated and did not justify her refusal to bathroom her students, teach in Room 133[,] with or without air conditioning, Room 358[,] and the cafeteria because the assignments posed a threat of physical harm to her health or safety is not supported by the evidence." (*Id.* at 34).

*Penalty*

- "From the time she did not get her first choice of Pre–K, the evidence established that Ms. Leon embarked on a collision course with the Principal and engaged in outright defiance and refused, not just [once], but disobeyed four teaching assignments. The terms of the assignments were clearly communicated to her verbally and, in writing, and she was repeatedly warned that her failure to perform her duties was insubordinate and

could lead to discipline. Her obstinate behavior remained unchanged despite the warnings and numerous opportunities to correct her behavior. With each and every assignment, [Plaintiff] showed no understanding that the Principal, and not she, was in charge with respect to teaching assignments, student welfare and building safety. However, when [Plaintiff] voiced concerns, the Principal attempted to give her options to allay her fears which she consistently rebuffed. At the end of the day, Ms. Leon was unable to identify a single classroom in a 53 room building in which she would be willing to teach other than in the Pre–K classroom." (*Id.* at 35).

The Hearing Officer held that termination was the appropriate penalty under the facts and circumstances, and that the DOE had established that Plaintiff was unfit to continue in her position. (*Id.* at 36). Plaintiffs repeated neglect of her duties, persistent insubordination, and consecutive refusals to perform her assigned teaching positions became, in effect, a refusal to work for six months. (*Id.* at 36).

Following her dismissal, Plaintiff brought a Notice of Verified Petition in New York Supreme Court, New York County, initiating an Article 75 proceeding challenging the holdings of the 3020–a proceedings. (Dkt. 48–1 (Decl. of Shakera Khandakar Exhibit B, Lillie Leon's Notice of Verified Petition (Aug. 1, 2011)) ("Ex. B")). Plaintiff (1) argued that the 3020–a decision was unenforceable because it was issued more than thirty days beyond the last date of the hearing (as directed by statute), (2) disagreed with the Hearing Officer's conclusions, and (3) asserted that the Hearing Officer was biased against her because of her age. (Dkt. 48–1 (Decl. of

Shakera Khandakar Exhibit C, *Leon v. Dep't of Ed. of the City of New York,* No. 108822/11 (Sup.Ct.N.Y.Cnty. Apr. 12, 2012) (Huff, J.)) ("Ex. C") at 2–3).

DOE moved to dismiss the petition. (*Id.* at 3). After reviewing the Hearing Officer's findings and determining that the "penalty [was] not shocking to one's sense of fairness," the Article 75 court granted the motion holding that Petitioner had "failed to demonstrate that the [3020–a proceeding] should be overturned." (*Id.* at 3).

### D. *The Motion to Dismiss the Amended Complaint*

Less than two weeks after the adverse, final decision in the Article 75 proceedings, Plaintiff filed her Amended Complaint in this case adding her 2010–11 allegations. (Dkt. 39). Plaintiff alleged that Defendants' conduct violated the ADEA, the Americans with Disabilities ("Act"), New York Executive Law § 206 ("NYSHRL"), the New York City Administrative Code, the First Amendment of the Constitution, and two state-law torts. Defendants DOE and Paul Cunningham have filed this motion to dismiss, arguing that Plaintiff's claims are either precluded by collateral estoppel and *res judicata* or insufficiently pled.

### II. ANALYSIS

### A. *Plaintiff's 2010–11 Claims Are Barred by Collateral Estoppel*

Defendants argue that Plaintiff's claims are barred by collateral estoppel and *res judicata.* According to Defendants, the issue of why Plaintiff was terminated from P.S. 117 has already been determined in the 3020–a and Article 75 proceedings. This Court agrees. Because the issue at the heart of Plaintiffs 2010–11 claims—whether the cause of her termination was discrimination—was already decided during prior state court proceedings, Plaintiff

is estopped from now bringing those claims in this Court.

### 1. Collateral Estoppel Standard

 "A federal court must apply the collateral estoppel rules of the state that rendered a prior judgment on the same issues currently before the court[.]" *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir.2002). Collateral estoppel in New York "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same." *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *El–Shabazz v. State of New York Comm. on Character & Fitness*, 428 Fed.Appx. 95, 96–97 (2d Cir. 2011) (collateral estoppel applies in the subsequent action "irrespective of whether the tribunals or causes of action are the same"). Under New York law, collateral estoppel applies when (1) the issue in question was actually and necessarily decided in a prior proceeding; (2) is decisive in the current proceeding; and (3) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *See Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir.2006). The party asserting preclusion carries the burden of establishing the first two elements, whereas the party opposing preclusion must demonstrate that there was not a full and fair opportunity to litigate. *Id.* at 281–82.

 "[F]ederal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state." *Burkybile v. Bd. of Ed. of the Hastings-on-Hudson Union Sch. Dist.*, 411 F.3d 306, 310 (2d Cir.2005). Findings reached through section 3020–a hearings, which are quasi-judicial administrative actions, are entitled to preclusive effect. *Id.* at 308, 311–12; *Smith v. New York City Dep't of Educ.*, 808 F.Supp.2d 569, 578 (S.D.N.Y.2011) (Buchwald, J.). Additionally, notwithstanding the limited judicial review by an Article 75 court of a 3020–a proceedings, "a state court has the authority to consider claims alleging a violation of due process with respect to the conduct of the [3020–a] proceeding in an Article 75 proceeding." *Saunders v. New York City Dep't of Ed.*, No. 07–CV–2725, 2010 WL 2816321, at *18 (E.D.N.Y. July 15, 2010) (Feuerstein, J.) (citing *Giardina v. Nassau County*, No. 08–CV–2007, 2010 WL 1850793, at *4–5 (E.D.N.Y. May 7, 2010) (Bianco, J.) (holding that the state court had the ability to consider the plaintiffs' claims regarding a lack of due process in the arbitration and could examine whether the procedures used in the arbitration itself complied with due process)). There is no question that the 3020–a and Article 75 proceedings here are afforded preclusive effect.

### 2. ADEA Standard

 Plaintiff's first cause of action against Defendants alleges that she was subjected to an adverse employment action and disparate treatment, a hostile work environment, and retaliation because of her age in violation of the ADEA. (Compl. at ¶¶ 81–83). "To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Smith*, 808 F.Supp.2d at 579; *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153–54 (2d Cir. 2000). If the plaintiff can establish this prima facie case, the burden of proof is then shifted to the defendants to offer

legitimate, nondiscriminatory justifications for their actions. *Smith*, 808 F.Supp.2d at 579 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). After the defendant articulates a legitimate reason for the action, the plaintiff must demonstrate that the proffered reason is pretextual by demonstrating that the defendants' reasons are false and that the adverse action was motivated by unlawful discrimination. *Smith*, 808 F.Supp.2d at 579 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir.1998)). In sum, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009); *DiGirolamo v. MetLife Grp., Inc.*, 494 Fed. Appx. 120, 122 (2d Cir.2012).

### 3. ADA Standard

■ Plaintiff also alleges that she was discriminated against because of her arthritis and allergies, and that Defendants failed to reasonably accommodate her disabilities. (Compl. ¶¶ 84–103). To state a claim for ADA discrimination, the plaintiff must demonstrate that: "(1) plaintiff's employer is subject to the ADA; (2) plaintiff was disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir.2004) (citing *Camer-*

*on v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir.2003)).

■ In the same vein, to state a claim for ADA failure to accommodate, the plaintiff must demonstrate that: "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009). "The same burden-shifting framework that applies to [Plaintiff's] age discrimination claims under the ADEA applies to ... [her] disability discrimination claims under the ADA." *Smith*, 808 F.Supp.2d at 580 (citing *McBride*, 583 F.3d at 96).

### 4. Plaintiffs Discrimination and Retaliation Claims Are Precluded

■ Defendants assert that Plaintiff's ADA and ADEA claims must be dismissed because "a Hearing Officer [has] found [P]laintiff guilty of misconduct, the parties have already actually litigated and decided that any adverse employment action was justified, and therefore, could not have been a pretext for unlawful discrimination." (Def.'s Br. at 4.)

In nearly identical circumstances, the court in *Smith* held that after a 3020–a Hearing Officer found that the plaintiff was guilty of misconduct, time and attendance abuse, insubordination, and neglect of duty, the issue of *why* the plaintiff was terminated was precluded from further litigation. *Smith*, 808 F.Supp.2d at 579–80. The court determined that the ultimate issue was the same both in the case before it and the 3020–a proceeding. *Id.* "[I]n both contexts, it becomes necessary to re-

solve whether [the plaintiff] was subjected to adverse employment actions because of his own conduct or because of other factors, such as impermissible discrimination by defendants." *Id.* at 580. After the 3020–a Hearing Officer found the plaintiff guilty of misconduct, "the parties [had] actually litigated and the hearing officers actually decided that any adverse employment action was justified and not based on impermissible discrimination. Thus, because the hearing officers concluded that there existed just cause for the adverse employment actions, those officers actually decided that [plaintiff] cannot make out a prima facie case of discrimination nor can he put forth evidence of pretext." *Id.* The court held that the "doctrine of collateral estoppel in fact bars the federal discrimination claims raised in [that] action." *Id.* at 579.

Here, as in *Smith,* "it is well-settled that the [hearing], which [was] conducted in accordance with section 3020–a of the Education Law, may be afforded preclusive effect." *Smith,* 808 F.Supp.2d at 580 (citing *Burkybile,* 411 F.3d at 308). Accordingly, Plaintiff's ADA and ADEA discrimination and retaliation claims, as far as they relate to the 2010–11 school year, are collaterally estopped.

The question before the Court is whether Plaintiff was terminated because of improper conduct or Defendants' discrimination or retaliation against her. But during the 3020–a proceedings, the parties actually litigated this very issue, (Ex. A at 2), and the Hearing Officer actually decided that Plaintiff's termination was caused by Plaintiff's insubordinate conduct, not by impermissible discrimination or retaliation. (*Id.* at 36). The Hearing Officer's determination that there was cause for Plaintiff's termination precludes Plaintiff from making a prima facie case of discrimination or retaliation.

Plaintiff had a full and fair opportunity to litigate the issue of her termination. Plaintiff was given a three-day evidentiary hearing in which she was represented by counsel and was given every opportunity to present evidence, argue her view of the facts, and cross-examine witnesses. (Ex. A at 2). Further, the cause of Plaintiff's termination was necessary to the final judgment in the 3020–a proceeding. The crucial questions in the proceeding were whether the DOE's alleged specifications were true and whether they supported terminating a tenured teacher. The Hearing Officer unequivocally and validly held that at least five of the specifications were proven by the DOE and that the insubordinate acts justified the termination of Plaintiff. (*See* Ex. A). These findings were given a second consideration on appeal in the Article 75 court, which affirmed the Hearing Officer. *Saunders,* 2010 WL 2816321, at *18 ("By denying the petition pursuant to Article 75, the state court actually and necessarily decided both that [Hearing Officer's] decision was supported by adequate evidence and that the decision was in accord with due process.").

Plaintiff argues that the holding in another Southern District case, *Senno v. Elmsford Union Free Sch. Dist.,* 812 F.Supp.2d 454 (S.D.N.Y.2011) (Wood, J.), dictates a different result. The court in *Senno* held that the plaintiff's retaliation claim had not been considered in the 3020–a proceeding and was therefore not collaterally estopped from being re-litigated in the federal lawsuit. *Id.* at 471. However, the retaliation claim in *Senno* is distinguishable from Plaintiff's claim here, as the plaintiff in *Senno* alleged retaliation based on his disparate treatment compared to one other school district employee who engaged in the same conduct as plaintiff, but was not terminated. *See id.* at 461 ("[Plaintiff's retaliation] claim will turn on

whether Plaintiff and [the other employee] were similarly situated 'in all material respects,' which, in turn, depends in part upon whether they engaged in misconduct that was 'of comparable seriousness.' "). The court in *Senno* was unable to give preclusive effect to the 3020–a proceeding because the Hearing Officer did not do a comparative evaluation or decide any issue related to the school district's treatment of the other employee. *Id.* at 471. That issue is not present here as the acts of discrimination and retaliation that were before Plaintiff's Hearing Officer are the very same acts of discrimination and retaliation alleged in the Amended Complaint. Unlike in *Senno,* Plaintiff's 3020–a proceeding addressed all of the same facts relevant to her federal claims in determining that the cause of Plaintiff's termination was her own inappropriate conduct.

The Hearing Officer's findings, upheld in a subsequent Article 75 proceeding, foreclose Plaintiff's ability to make a prima facie case for discrimination or retaliation concerning her termination during the 2010–11 school year under either the ADA or ADEA. Plaintiff cannot allege in this proceeding that she was terminated because of discrimination or retaliation when prior State Proceedings have held otherwise. Plaintiff's First and Second Causes of Action, as far as they relate to the 2010–11 school year, are therefore dismissed with prejudice.

### 5. *Plaintiffs Failure to Accommodate Claims*

 Plaintiff's Third Cause of Action alleges that Defendants denied Plaintiff's request for reasonable accommodations for her allergies. Again, the Hearing Officer was faced with this very question and decided the issue in Defendants' favor. In determining that Plaintiff was guilty of Specification 6, the Hearing Officer determined that Plaintiff failed to make a proper request for an allergy accommodation for the 2010–11 school year. (Ex. A at 28–29). The Hearing Officer found that Plaintiff "did not apply for an accommodation for air conditioning from the Medical Bureau" and that Principal Cunningham "was not prohibited from assigning [Plaintiff] to the new wing[.]" (Ex. A at 29). In fact, the Plaintiff herself admitted during the 3020–a proceeding that she was initially given a non-air-conditioned room only because the principal was attempting to appease her despite the *lack of an official request for an accommodation.* (Ex. A at 29) (Plaintiff "testified that . . . she did not apply for an accommodation for air conditioning from the Medical Bureau."). Plaintiff cannot allege that she was denied a reasonable accommodation when she did not actually request one. *See Thorner–Green v. New York City Dept. of Corrs.,* 207 F.Supp.2d 11, 14–15 (E.D.N.Y.2002) (Gershon, J.) (an "employee cannot hold an employer liable for failing to provide an accommodation that the employee has not requested in the first place"); *Falchenberg v. New York City Dep't of Ed.,* 375 F.Supp.2d 344, 348 (S.D.N.Y.2005) (Sweet, J.).

The question of whether Plaintiff requested an accommodation was actually litigated and decided in the 3020–a proceedings. The Hearing Officer needed to determine whether Plaintiff was guilty of Specification 6 (failure to report to her teaching assignment in the air-conditioned Room 133), and if Plaintiff had a health or safety reason for not reporting to her teaching assignment, she would not have been insubordinate. (Ex. A at 28–29). Yet, the Hearing Officer found that Plaintiff did not have such a justification, i.e. a proper request for an accommodation, and therefore was insubordinate. (Ex. A at 29). As the Hearing Officer necessarily held that Plaintiff failed to make such a

request, Plaintiff is collaterally estopped from alleging a necessary element of her failure to accommodate claim.[5]

Accordingly, the Defendants' motion to dismiss the Third Cause of Action, as it applies to the 2010–11 school year, is granted.

### 6. Plaintiff's New York Human Rights Law Claims

■ Plaintiff alleges violations of New York Executive Law § 296 ("NYSHRL") for unlawful discrimination, retaliation, and failure to engage in interactive negotiation as well as the aiding and abetting of such violations. (Compl. ¶¶ 104–22). "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Group of Onondaga*, 369 F.3d 113, 117 n. 1 (2d Cir.2004) (noting that its decision on ADA claims "pertain[ed] equally to ... parallel state claim"); *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("age discrimination suits brought under the State HRL ... are subject to the same analysis as claims brought under the ADEA"). Accordingly, the Court will evaluate Defendants' motion to dismiss the Plaintiff's NYSHRL claims using the same legal standards as her ADA and ADEA claims.

As with her federal claims, Plaintiff is estopped from bringing her § 296 claims by the legal findings of the 3020–à Hearing Officer, as far as they relate to the 2010–11 termination. For the same reasoning as

discussed above, the Hearing Officer necessarily decided that Plaintiff's termination was a result of her insubordination, not the result of any discriminatory or retaliatory treatment towards her. (Ex. A at 36). Therefore, Plaintiff is precluded from asserting that she was terminated because of Defendants' discrimination or retaliation towards her in violation of the NYSHRL.

Plaintiff's Fourth and Fifth Causes of Action are dismissed to the extent they concern the 2010–11 school year termination.

### B. Plaintiff's First Amendment Claim and Pre–2010–11 Allegations of Discrimination, Retaliation, Failure to Accommodate, and Hostile Work Environment Fail As a Matter of Law

■ "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A sufficiently pled complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir.2013) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). If a complaint merely offers labels and conclusions, a formulaic recitation of the elements, or

---

**5.** It is also worth noting that Plaintiff's claim that the school officials "refused to enter into an interactive process of negotiation" is without merit. The Hearing Officer determined that despite not having requested an accommodation for her allergies, the P.S. 117 administration nonetheless deferred to Plaintiff's preferences by first giving her a kindergarten classroom without air conditioning, Room 113, and then offering to turn off the air conditioning in Room 133 when she was re-assigned there (after insubordinately refusing to bathroom her students in Room 113). (Ex. A at 29). It was Plaintiff who ultimately testified that only one of the 53 rooms in P.S. 117 was suitable for her to teach in. (Ex. A at 35). In essence, when Plaintiff was not given the pre-K teaching assignment that she wanted, she refused to engage in interactive, reasonable negotiation with the administration.

"naked assertions devoid of further factual enhancement," it will not survive a motion to dismiss. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). The Court must accept all factual allegations in the complaint as true, but is "not bound to accept as true legal conclusion couched as factual allegation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Legal conclusions must be supported by factual allegations. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *Pension Ben. Guar.,* 712 F.3d at 717.

### 1. Plaintiff's First Amendment Claim Fails as Her Speech was Made as a DOE Employee

Plaintiff's First Amendment claim rests on her allegation that the speech in question—Plaintiff's statements to her students' parents that Room 113 was "deplorable, filthy, and unsafe" and lacked age-appropriate furniture—was made outside of her DOE employment and as a public citizen. (*See* Pl.'s Br. at 23). To determine whether or not a plaintiff's speech is protected by the First Amendment, a court must begin by asking whether the employee spoke as a citizen on a matter of public concern. *Sousa v. Roque,* 578 F.3d 164, 170 (2d Cir.2009). "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* (internal citations omitted). If the subject of an employee's speech is a matter of public concern, her speech is nonetheless unprotected by the First Amendment if it is made in her capacity as a government employee. *See id.; see also Jackler v. Byrne,* 658 F.3d 225, 237 (2d Cir.2011); *Anemone v. Metro. Transp. Auth.,* 629 F.3d 97, 115–16 (2d Cir.2011).

The Supreme Court has recognized that a public employee must "by necessity ... accept certain limitations on his or her freedom," because, her speech can "contravene governmental policies or impair the proper performance of governmental functions." *Garcetti v. Ceballos,* 547 U.S. 410, 418–19, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Furthermore, an employee's speech can be found to be made as part of an employee's official duties even if it is not expressly required, "so long as the speech is in furtherance of such duties." *Weintraub v. Bd. of Ed. of City Sch. Dist. of City of N.Y.,* 593 F.3d 196, 202 (2d Cir.2010). The inquiry is "a practical one" as "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti,* 547 U.S. at 424–25, 126 S.Ct. 1951. Because, the determination of whether a public employee is speaking pursuant to her official duties "is not susceptible to a brightline rule," the Second Circuit has held that "[c]ourts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." *Ross v. Breslin,* 693 F.3d 300, 306 (2d Cir.2012). A teacher's communication with a student's parents concerning "what occurred in the classroom" has been held to be made in the plaintiff's capacity as a teacher. *Marchi v. Bd. of Coop. Ed. Servs. of Albany,* 173 F.3d 469, 476 (2d Cir.1999).

Reading the Amended Complaint in the light most favorable to Plaintiff, she has failed to sufficiently allege that she was speaking outside her capacity as an

employee of the DOE when she told the parents that Room 113 was "deplorable, filthy and unsafe." (Compl. ¶ 113). Here, the practical inquiry set forth in *Garcetti* leads to only one conclusion: a teacher discussing classroom conditions with students' parents is wholly within the scope of the teacher's core duties. *See Weintraub*, 593 F.3d at 202–03 (holding that a teacher's union grievance "was pursuant to his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher") (internal citations omitted); *see also Marchi*, 173 F.3d at 476 (holding that a note sent to a parent as a "thank you" for providing religious music that would calm a special needs student was sent in the plaintiff's capacity as a teacher). Just as maintaining classroom discipline "is an indispensable prerequisite to effective teaching and classroom learning," *Weintraub*, 593 F.3d at 203, having a clean classroom with proper furniture for the students is equally vital to the educational experience. Plaintiff's speech to the parents concerning the attributes of their children's classroom was "undertaken in the course of performing [her] primary employment responsibility of teaching." *Id.* (internal citations and quotations omitted).[6]

Furthermore, Plaintiff exercised her speech through means with no relevant civilian analogue. *See id.* at 204 ("[T]he lack of a citizen analogue is not dispositive . . . [but] it does bear on the perspective of the speaker—whether the public employee is speaking as a citizen[.]") (internal cita-

tions omitted). When speech is made in a form and context that is only available to public employees—and not to members of the public in general, such as submitting a letter to the editor of a newspaper or an elected official—it is indicative that the speech was made in the speaker's capacity as a public employee. *Id.* Here, Plaintiff communicated with the parents by calling them at their homes and speaking with them at the end-of-the-day student pick up location. Both are circumstances created solely by her position as the children's schoolteacher and by function of her DOE responsibilities. Plaintiff's communiques lack "a relevant analogue to citizen speech" and demonstrate that she was speaking in her role as a public employee. *Id.*

Because a practical inquiry into the nature of Plaintiff's professional duties clearly demonstrates that communications made to her students' parents about the condition of the children's classroom fall squarely within the scope of Plaintiff's DOE employment, Plaintiff has failed to state a claim for the violation of her First Amendment rights. Accordingly, Plaintiff's First Amendment claim is dismissed.

### 2. Plaintiff Has Failed to State a Claim for Discrimination or Retaliation

Beyond the facts of the 2010–11 school year, the Amended Complaint alleges a number of earlier, discrete events that Plaintiff argues constitute adverse employment actions under the ADA and ADEA. These events are not estopped by the 3020–a proceeding and must be considered

---

**6.** Plaintiffs only argument in defense of her claim is that Defendants took the position in the 3020–a hearing that Plaintiff was "insubordinate" when she contacted the parents and therefore they conceded that she was acting outside her role as an employee. (Pl.'s Br. at 23). But even if a finding of insubordination were dispositive, no such argument or

determination was made. Rather, Defendants argued, and the Hearing Officer found, that Plaintiff's conduct was "unprofessional and unbecoming her position" when she contacted the parents without first requesting that the administration deal with her alleged classroom issues. (Ex. A at 27–28).

separately under the Fed.R.Civ.P. 12(b)(6) motion to dismiss standard. Specifically, Plaintiff alleges that over a five-year period Defendants openly stated that she should retire, attempted to force her to sign a statement as to when she would retire, assigned her teaching assignments inconsistent with her top preference, placed discipline letters in her files, provided her with an "unsatisfactory" evaluation, placed troublesome students in her class, made her write out long lesson plans, "microscopically monitored and baselessly reprimanded her," excluded her letter from a ceremony program, cancelled her class's field trips in 2007 and 2010, and excluded her class from a ceremony. (Pl.'s Br. at 12–13). Defendants respond that none of these actions constitute an adverse employment action under the ADA, ADEA, or NYSHRL and therefore must be dismissed as Plaintiff cannot make out a prima facie case for discrimination or retaliation.

■ An essential element under both the federal and state statutes is that Plaintiff must allege an adverse employment action. *See, supra,* Sections II.A.2–3, 6. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Ed.,* 202 F.3d 636, 640 (2d Cir.2000) (*abrogated on other grounds*), "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotations omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.*

■ Plaintiff has not alleged a materially adverse employment action in the years prior to the 2010–11 school year. Plaintiff argues that deprival of her top-choice teaching assignment, negative performance evaluations, exclusion from certain extracurricular school activities, and questioning as to when she would retire constitute adverse employment actions. But, none of those acts rises to the level of a materially adverse change in the terms and conditions of her employment sufficient to state a claim under the ADA, ADEA, or NYSHRL, *See Mills v. S. Conn. State Univ.,* 519 Fed.Appx. 73, 75 (2d Cir. 2013) (finding that various incidents including intimidating behavior, shunning by colleagues, refusals to allow plaintiff to teach upper-level courses, and refusals to accommodate scheduling requests did not constitute adverse actions as they did not reflect "a materially adverse *change* in the terms and conditions of employment"); *Williams v. R.H. Donnelley Corp.,* 368 F.3d 123, 128 (2d Cir.2004) (concluding that the denial of an employee's request for transfer is not an adverse employment action unless the denial "created a materially significant disadvantage in her working conditions"); *Weeks v. N.Y. State Div. of Parole,* 273 F.3d 76, 86 (2d Cir.2001) ("It hardly needs saying that a criticism of an employee ... is not an adverse employment action.") (*abrogated on other grounds); Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997) (holding that denying an employee the use of an office or telephone to conduct a job hunt once he had notice of his termination was not "sufficiently deleterious to constitute adverse employment action prohibited by the ADEA"); *Hurt v. Donahoe,* No. 07–CV–4201, 2011 WL 10526984, at *7–8 (E.D.N.Y. Feb. 24, 2011) (Vitaliano, J.) *aff'd,* 464 Fed.Appx. 40 (2d Cir.2012) (holding that a supervisor's comment that if

plaintiff walked through a specific area and injured herself that she would be left there was "not a change in the terms and conditions of [plaintiff's] employment" and therefore was not an adverse employment action); *Mabry v. Neighborhood Defender Serv.*, 769 F.Supp.2d 381, 393 (S.D.N.Y. 2011) (Castel, J.) ("Negative evaluations or reviews, without accompanying tangible harm or consequences, do not constitute materially adverse action altering the conditions of employment."). Without a materially adverse employment action, Plaintiff's discrimination and retaliation claims fail as a matter of law.

■ Furthermore, Plaintiff has failed to sufficiently plead that any of Defendants' actions during the relevant time period were motivated by discriminatory or retaliatory animus. Plaintiffs continued allegations that "younger similarly situated teachers" were treated differently than she are conclusory and amount to little "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "[N]aked assertions devoid of further factual enhancement," will not survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Plaintiff's Complaint does not include specific factual references to transform her general allegations that these actions were motivated by discriminatory animus into cognizable claims for discriminatory or retaliatory treatment.

Plaintiff's claims of discrimination and retaliation for Defendants' alleged conduct prior to the 2010–11 school year fail as a matter of law and are hereby dismissed.

### 3. Plaintiff Has Failed to State a Claim for a Hostile Work Environment

■ Plaintiff alleges that she was subjected to a hostile work environment at P.S. 117 prior to the 2010–11 school year because of her age and disabilities. (Compl. at ¶¶ 83, 117). To state a claim for a hostile work environment, the Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir.2007) (citations and quotations omitted); *Fordham v. Islip Union Free Sch. Dist.*, 662 F.Supp.2d 261, 271 (E.D.N.Y. 2009) (Hurley, J.).

■ Further, Plaintiff must prove that: "(1) [s]he was subjected to harassment, based on [her] age, that was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abuse working environment; and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alleva v. New York City Dep't of Investigation*, 696 F.Supp.2d 273, 283 (E.D.N.Y. 2010) (Block, J.), *aff'd*, 413 Fed.Appx. 361 (2d Cir.2011) (citing *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002)). For Defendants' conduct to be sufficiently "severe or pervasive," Plaintiff must show that the conduct was: "(1) objectively severe or pervasive ... creating an environment that a reasonable person would find hostile or abusive, (2) subjectively severe or pervasive, in that [Plaintiff] must have perceived it as hostile or abusive, and (3) on account of [Plaintiff's] age." *Id.* (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007)) (internal quotations omitted). "Objective severity is assessed on a 'totality of the circumstances,' which may include: (1) frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Harris v.*

*Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

 In light of these principles, Plaintiff has failed to state a claim for a hostile work environment. Plaintiff's claim fails for a number of reasons, including that the Amended Complaint does not raise a plausible inference that Defendants' conduct was related to Plaintiff's age or disabilities, or that the P.S. 117 work environment was "so severely permeated with *discriminatory* intimidation, ridicule, and insult" so as to alter the conditions of Plaintiff's employment. *Mills,* 519 Fed.Appx. at 75–76 (emphasis added); *see also Joseph v. Brooklyn Developmental Disabilities Servs. Office,* 12–CV–4402, 2013 WL 151197, at *10 (E.D.N.Y. Jan. 15, 2013) (Gleeson, J.). Plaintiff has alleged a series of discrete, unrelated events, spanning over a number of years, unlinked to any specific allegations of discriminatory motive, which were neither severe nor pervasive. *See Taylor v. New York City Dep't of Educ.,* No. 11–CV–3582, 2012 WL 3150388, at *8 (E.D.N.Y. Aug. 2, 2012) (Gleeson, J.) (finding teacher's allegations of being yelled at for not fitting in, being denied a transfer, and receiving negative performance evaluations at the end of two school years were insufficient to state a hostile work environment claim).

Further, Plaintiff's allegations that she was asked when she would retire and requested to fill out a form stating her intended date of retirement are not indicative of a discriminatory, hostile work environment. (Compl. at ¶¶ 27–28, 41). The Second Circuit's decision in *Kassner* makes clear that such conduct does not constitute a hostile work environment. In *Kassner,* one plaintiff alleged that she was subjected to "repeated" and "degrading" comments including "drop dead," "retire early," "take off all of that make-up," and "take off your wig," while the second plaintiff merely alleged that she was "pressured" by defendants to retire from employment. 496 F.3d at 240–41. The court held that the first plaintiff had stated a hostile work environment claim, while the second had not. *Id.* Plaintiff's claim here is analogous to the second *Kassner* plaintiff and fails as a matter of law.

Plaintiff has failed to state a claim for a hostile work environment under either the ADEA or NYSHRL and those causes of action are hereby dismissed.

### 4. Plaintiff Has Failed to State a Claim for Failure to Accommodate

As discussed in Section II.A.5, *supra,* a failure to accommodate claim under the ADA fails as a matter of law if the Plaintiff has failed to allege that she made a request for an accommodation. The Amended Complaint is devoid of any non-conclusory allegation that, during the pre–2010–11 school year period, Plaintiff actually requested an accommodation according to DOE procedures. Plaintiff alleges that she "complained" of the temperatures in the new wing of P.S. 117, (Compl. at ¶ 19) and "provided" documentation concerning her arthritis, knee trauma, and allergies. (*Id.* at ¶ 38, 40). But notably absent in the record is a request to the Medical Bureau for an accommodation for these disabilities or a rejection of such accommodation by the Defendants. Without a proper request for an accommodation, Plaintiff has failed to state a claim for failure to accommodate under the disability laws and her claims are hereby dismissed. *See Falchenberg,* 375 F.Supp.2d at 348.

### C. The Court Declines to Exercise Jurisdiction Over Plaintiffs Remaining State Law Claims

 Plaintiff also brings claims for intentional infliction of emotional distress,

defamation, and violations of New York City Administrative Code § 8–107. Prior to a revision by the New York City Council in 2005, claims under the Code were analyzed identically to federal and state law discrimination claims. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir.2013). However, the 2005 Restoration Act created broader liability than exists under federal and state law, and the Second Circuit has instructed that discrimination claims under the Code be construed "separately and independently from any federal and state law claims." *Id.* (citing Restoration Act § 1; *Hernandez v. Kaisman,* 103 A.D.3d 106, 957 N.Y.S.2d 53 (1st Dep't 2012)). Therefore this Court cannot apply the same analysis to Plaintiff's New York Administrative Code claims as it did to the federal and state discrimination claims.

Accordingly, along with Plaintiff's intentional infliction of emotional distress and defamation claims, the Court declines to exercise supplemental jurisdiction over the remaining municipal and state law claims.

■ When the federal claims in an action based on supplemental jurisdiction are dismissed, the state claims should be dismissed as well. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir.1998). While the dismissal of supplemental state claims is discretionary at this juncture, the usual case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch,* 154 F.3d at 61 (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Once a district court has dismissed all claims over which it has original jurisdiction, it still balances the traditional "values of judicial economy, convenience, fairness, and comi-

ty" while maintaining the guiding directive that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006) (quoting *Cohill,* 484 U.S. at 350, 108 S.Ct. 614).

■ In this case, discovery is still pending and there is no reason that any of the discovery would need to be repeated if Plaintiff's pendent claims were brought in state court. *Murray v. Visiting Nurse Servs. of N.Y.,* 528 F.Supp.2d 257, 281 (S.D.N.Y.2007) (Sullivan, J.); *see also Kelsey v. City of New York,* No. 03–CV–5978, 2006 WL 3725543, at *11 (E.D.N.Y. Sept. 18, 2006) (Bianco, J.) (declining to exercise pendent jurisdiction where "it [was] not clear to the [c]ourt why the discovery would need to be repeated if the [state law] negligence claim [were to be] litigated in state court"). Furthermore, a trial date has not been set in this matter and this is the first dispositive motion. *Cf. Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996) (upholding the exercise of jurisdiction over state claims where federal claim was dismissed only nine days before trial); *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir.1990) (upholding exercise of jurisdiction over state claims where discovery was completed, three dispositive motions were decided, and case was ready for trial). Finally, Plaintiff's state and city claims will not be time-barred in New York state court because of this dismissal, and Plaintiff will suffer no undue prejudice by this Court's refusal to exercise supplemental jurisdiction over her state and municipal law claims. *See* N.Y. C.P.L.R. § 205(a) (permitting a plaintiff to bring a new action upon the same transaction

"within six months after [the prior action's] termination,").[7]

In accordance with the guiding principle that district courts will not typically maintain state claims once the anchoring federal claims are dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and municipal law claims. *See* 28 U.S.C. § 1367(c)(3). Those causes of action are dismissed without prejudice.

### III. CONCLUSION

Defendants DOE and Paula Cunningham's motion to dismiss the Amended Complaint is GRANTED in its entirety. The claims related to the 2010–11 school year are barred by principles of collateral estoppel and are dismissed with prejudice. The First Amendment and pre–2010–11 school year claims are dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6), and are dismissed without prejudice. Plaintiff's remaining state and municipal law claims are dismissed for lack of pendent jurisdiction and are dismissed without prejudice.

**SO ORDERED.**